# In the United States Court of Federal Claims

No. 16-912L and
No. 16-1565L and No. 18-375L Consolidated
No. 18-983L
(Filed: June 22, 2020)

|  |  |  |
|---|---|---|
| PERRY LOVERIDGE, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Motion for Summary Judgment; Rails- |
| | ) | to-Trails; Oregon Law; Abandonment; |
| THE UNITED STATES, | ) | Adjacency; Centerline Presumption; |
| | ) | Valuation Maps; Condemnation; |
| Defendant. | ) | Registrar of Title |
| | ) | |
| | ) | |
| ALBRIGHT, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| STIMSON LUMBER COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant | ) | |
| | ) | |

*Thomas S. Stewart*, Kansas City, MO, for *Loveridge* and *Stimson Lumber* plaintiffs. *Elizabeth G. McCulley*, Kansas City, MO, of counsel.

*Meghan S. Largent*, St. Louis MO, for *Albright* plaintiffs. *Lindsay S.C. Brinton*, St. Louis MO, of counsel.

*James H. Hulme*, Washington DC for *Aeder* plaintiffs. *Laurel LaMontagne* and *Morgan Pankow*, Washington DC, of counsel.

*David W. Gehlert*, Environment and Natural Resources Division, United States Department of Justice, Washington DC, with whom was *Prerak Shah*, Acting Deputy Assistant Attorney General, for defendant.

## O P I N I O N

**FIRESTONE**, *Senior Judge*.

## I.     INTRODUCTION

This is the court's fourth opinion arising from the parties' cross motions for partial summary judgment in *Albright v. United States* (Case No. 16-1565L), *Aeder v. United States* (Case No. 18-375L), *Loveridge v. United States* (Case No. 16-912L), and *Stimson Lumber v. United States* (Case No. 18-983L). The plaintiffs in these related cases claim they are entitled to just compensation under the Fifth Amendment for a taking of their property in connection with the creation of the Salmonberry Trail in Oregon. The Salmonberry Trail was established under the National Trails System Act, 16 U.S.C. § 1247(d), after the Port of Tillamook Bay Railroad ("POTB") ceased operations over portions of its railways in 2007. The POTB obtained its property interest over the portions of the railways from the Pacific Railway & Navigation Company ("Railroad"). Authorization to establish the Salmonberry Trail was issued by the government in a Notice of Interim Trail Use ("NITU") dated July 26, 2016. A final trail use and rail

banking agreement was reached between the POTB and the Salmonberry Trail Intergovernmental Agency ("STIA") on October 27, 2017. The plaintiffs claim to own property underlying the POTB's railroad right of way and assert that the creation of the Salmonberry Trail gave rise to a "taking" of their property. The extensive history of this litigation can be found in the court' prior decisions and will not be repeated here. *See Loveridge v. United States*, 139 Fed. Cl. 122 (2018), *recons. partially granted*, 2019 WL 495578 (2019).

The court's first two opinions addressed whether deeds granted to the Railroad by prior landowners granted a fee rather than an easement for the right of way at issue. Where the Railroad obtained a fee interest and thus owned the right of way, the court found that the plaintiffs could not establish a taking. *See Loveridge*, 139 Fed. Cl. 122; *Loveridge*, 2019 WL 495578. In the court's recently-issued third opinion, *Loveridge v. United States*, 2020 WL 2301463 (Fed. Cl. May 8, 2020), the court determined whether the trail use and railbanking authorized by the NITU fit within the scope of certain easements.

In this fourth opinion, the court addresses the remaining three issues raised in the parties' pending cross motions for partial summary judgment: (1) whether plaintiffs must establish that their easements were abandoned under Oregon law prior to issuance of the NITU to receive just compensation for a new trail easement on plaintiffs' fee land rather than compensation for a trail easement on top of a continuing rail easement; (2) where an easement for a road, street or other pathway was established between plaintiffs' property and the Railroad right of way before the plaintiffs acquired their property and where these

plaintiffs' deeds identify that road, street or other pathway as their property boundary, can the plaintiffs claim a property interest across the road, street or other pathway to the centerline of the railroad right of way under Oregon law; and (3) whether plaintiffs who could not produce a deed or other instrument identifying the interest conveyed to the Railroad may rely on other evidence and Oregon state law presumptions to prove that the Railroad obtained an easement and that these plaintiffs own the property underlying the easement.

For the reasons discussed below, the parties' cross motions for partial summary judgment are **GRANTED-IN-PART** and **DENIED-IN-PART**.

## II.    LEGAL STANDARDS

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." RCFC 56(a). A genuine dispute is one that could permit a reasonable jury to enter a verdict in the non-moving party's favor, and a material fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party moving for summary judgment bears the initial burden of showing the "absence of evidence to support the non-moving party's case." *Crown Operations Int'l, Ltd. v. Solutia Inc.*, 289 F.3d 1367, 1375 (Fed. Cir. 2002) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).

Once the moving party has met its burden, the party opposing summary judgment must respond and "demonstrate by specific factual allegations that a genuine issue of material fact exists for trial." *Crown Operations*, 289 F.3d at 1388 (citing *Celotex Corp.*,

477 U.S. at 322-23. "[M]ere allegations of a genuine issue of material fact without supporting evidence will not prevent entry of summary judgment." *Republic Sav. Bank, F.S.B. v. United States*, 584 F.3d 1369, 1374 (Fed. Cir. 2009). The court must view the inferences to be drawn from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## III.   DISCUSSION

The facts and law relevant to each of the three issues are discussed in the separate sections of the opinion.[1]

### A.      Abandonment of a Railroad Easement Under Oregon Law

The court first turns to the government's argument that the plaintiffs whose property was burdened by a railroad purpose easement prior to the NITU must demonstrate that the railroad purpose easement was abandoned prior to the issuance of the NITU to receive just compensation for the imposition of a trail use easement on unencumbered land. The court holds, as discussed below, that these plaintiffs need not do so under well-settled law.

### 1.      Undisputed Facts

The right of way segment at issue involves the POTB railroad line located between Milepost 775.01 near Banks, Washington County, Oregon, and Milepost 856.08 near Tillamook, Tillamook County, Oregon ("Railroad Line"). *See Loveridge*, 139 Fed.

---

[1] Briefing of these issues was completed on April 3, 2020. The parties have not requested oral argument, and the court has determined that oral argument is not necessary.

Cl. at 129. The POTB has not run trains on the relevant portions of the right of way since at least 2007. *See Albright*, ECF No. 20 at 3; *Albright*, ECF No. 24 at 4.

On May 26, 2016, the POTB filed with the Surface Transportation Board ("STB") a "Notice of Intent to Partially Terminate (Abandon) Service" for the railroad segment at issue here. *Loveridge*, 139 Fed. Cl. at 129. The Notice stated that "a portion of the rail line suffered catastrophic damage due to severe storms" and that "POTB has unsuccessfully sought funding for repairing the line." *See Albright*, ECF No. 20-1 at 2. It further stated "POTB does not believe that it will be able to obtain the necessary funding to repair and rehabilitate the line" and therefore "POTB is giving this notice of its intent to terminate service over (fully abandon) the Subject Line." *Id.*

On or about June 17, 2016, the STIA filed with the STB a Statement of Willingness to Assume Financial Responsibility ("Statement") to operate a trail on the relevant segment of the right of way. 139 Fed. Cl. at 129. In its Statement, the STIA stated that the relevant railroad segment "is suitable for railbanking" and requested that the STB issue a Public Use Condition and NITU under the National Trails System Act, 16 U.S.C. § 1247(d). *Id.*

On July 26, 2016, the STB issued a NITU. *Id.* After two extensions of the NITU, on October 27, 2017 POTB and STIA notified the STB that they had entered into a final trail use and rail banking agreement regarding the relevant railroad segment. *Id.*

### 2.    Relevant Federal and Oregon Law

"[T]he [STB's] issuance of a NITU effects a taking . . . when state law reversionary property interests are blocked . . . ." *Caquelin v. United States*, No. 2019-

1385, 2020 WL 2781657, at *3 (Fed. Cir. May 29, 2020) (quotation and citation omitted).

Thus, to find a taking, the court must determine whether issuance of the NITU in this

case blocked the plaintiffs' state law reversionary interests, meaning that, but for the

NITU, the railroad's easement would have been abandoned and the property returned

unencumbered by the railroad's easement.  *Castillo v. United States*, 952 F.3d 1311, 1315

(Fed. Cir. 2020) ("If, in the absence of a conversion to trail use, state law would provide

for return to a person of full rights in the land, a taking occurs when, pursuant to the

Trails Act, state law reversionary interests are effectively eliminated in connection with a

conversion to a railroad right-of-way to trail use." (internal quotations and alterations

omitted)).

The property rights of the parties in this case are analyzed under Oregon law.  *See

Castillo*, 952 F.3d at 1319 ("We analyze the property rights of the parties in a rails-to-

trails case under the relevant state's law . . . .").  Under Oregon law, an easement can be

terminated by consent, prescription, abandonment, or merger. *Cotsifas v. Conrad*, 905

P.2d 851, 852 (Or. Ct. App. 1995). "A party claiming abandonment [of an easement]

must show in addition to non-use 'either [a] verbal expression of an intent to abandon or

conduct inconsistent with an intention to make further use.'" *Conner v. Lucas*, 920 P.2d

171, 174 (Or. Ct. App. 1996) (quoting *Abbot v. Thomson*, 641 P.2d 652, 654 (Or. Ct.

App. 1982) (alterations in original)).

### 3.    Analysis

In all four cases before the court for parcels where the Railroad obtained an

easement for railroad purposes, the government has moved for partial summary judgment

arguing that if the plaintiffs cannot show that the POTB terminated its railroad easement by abandonment before the NITU was issued, the NITU simply adds a new easement on top of the existing railroad easement and just compensation is limited. *Albright* Def.'s Mot. for Part. Summ. J. on Scope of Easements ("*Albright* Def.'s Aband. Mot.") at 14-15 (ECF No. 120); *Loveridge* Def.'s Mot. for Part. Summ. J. on Scope of Easements ("*Loveridge* Def.'s Aband. Mot.") at 14-15 (ECF No. 94); *Stimson Lumber* Def.'s Mot. for Part. Summ. J. on Scope of Easements ("*Stimson Lumber* Def.'s Aband. Mot.") at 10-11 (ECF No. 24).[2] In support, the government argues that, in Oregon, "an easement holder may be liable in trespass for use of an easement that is inconsistent with its scope" but that Oregon "easements are not extinguished by inconsistent uses." *See Albright* Def.'s Aband. Mot. at 15 (citing *Conner*, 920 P.2d at 175 and *Cotsifas*, 905 P.2d at 852.). The government therefore contends that if the plaintiffs cannot demonstrate prior abandonment of the right of way by the POTB under state law before issuance of the NITU, the plaintiffs are only entitled to just compensation for a railbanking and trail use easement on a land still encumbered by a railroad purposes easement. *Id.*

Plaintiffs respond that the government has misconstrued the law regarding the Trails Act. Specifically, the plaintiffs argue that they do not have to provide evidence that the railroad easements had actually terminated through abandonment under state law "to

---

[2] Although the court's prior decision addressed the scope of easements conveyed to the Railroad, it deferred judgment on the above issue. *See Loveridge*, 2020 WL 2301463, at *14 (indicating that the court will address "whether under Oregon law the United States is liable for imposing a new easement on the properties already encumbered by an easement or whether the easements were terminated prior to the alleged taking" in its subsequent decision).

either establish a taking or to prove the nature of their property interest prior to the NITU." *See Albright* Pls' Resp. at 13 (ECF No. 125) (quoting *Rogers v. United States*, 101 Fed. Cl. 287, 293 (2011)). Rather, the plaintiffs contend that they are entitled to compensation for a railbanking and trail use easement on unencumbered land if they can show that the POTB's railroad purposes easements would have been extinguished by abandonment under Oregon law but for the United States' issuance of the NITU. *Id.*; *see id.* at 4 n.8.

The court agrees with the plaintiffs that whether the easements were legally terminated prior to issuance of the NITU is not relevant to determining the nature of the property interest taken by the United States in connection with the easements limited to railroad purposes. The plaintiffs' claim before the court is rooted in the Trails Act's *preemption* of state property laws for terminating easements through abandonment. *See Caquelin*, 2020 WL 2781657, at *9 (holding that the taking occurs at "the time as of which, had there been no NITU, the railroad would have abandoned the rail line, causing termination of the easement that the NITU continued by law"). This is because upon issuance of the NITU, "the STB retains jurisdiction for possible railroad use and the abandonment of the corridor is blocked." *Caldwell v. United States*, 391 F.3d 1226, 1229 (Fed. Cir. 2004). Therefore, where plaintiffs can show that POTB would have abandoned its easement but for the Trails Act, the plaintiffs' "measure of damages for just compensation must be the difference between the value of plaintiffs' land unencumbered by a railroad easement and the value of plaintiffs' land encumbered by a perpetual trail

use easement subject to possible reactivation as a railroad." *Raulerson v. United States*, 99 Fed. Cl. 9, 12 (2011).

This court has uniformly rejected the government's contention to hold otherwise. *See, e.g.*, *Ladd v. United States*, 110 Fed. Cl. 10, 13 (2013) ("Plaintiffs' reversionary interests are determined in this court by subtracting the value of plaintiffs' land with easements for recreational trails, from their land without easements—unencumbered property."); *see also Balagna v. United States*, 138 Fed. Cl. 398, 405 n.4 (2018) ("The government is thus wrong to suggest that, when it comes to valuation, it is somehow relevant that Plaintiffs' land has long been encumbered by a railroad corridor. . . . For valuation purposes, the Court treats the property as though the railroad easement never existed." (quotation omitted)).[3] The court declines to depart from this approach.

Having determined that plaintiffs need only demonstrate that the easements limited to railroad purposes would have been terminated by abandonment, the court considers the undisputed facts under the Oregon law governing abandonment. It is undisputed that the POTB has not operated rail traffic on the relevant railroad track since at least 2007. On May 26, 2016, the POTB filed with the STB a Notice of Intent to Partially Terminate (Abandon) Service for the railroad segment at issue here. It is also undisputed that the Notice indicated that the POTB would not be able to repair damage to

---

[3] Indeed, the government acknowledges that this court has considered and rejected this argument in several cases. *See Albright* Def.'s Aband. Mot. at 14 (citing *Toscano v. United States,* 107 Fed. Cl. 179 (2012); *Geneva Rock Prods*, *Inc. v. United States*, 107 Fed. Cl. 166 (2012)).

the Railroad Line at issue and rehabilitate the Line and declared the POTB's "intent to terminate service over (fully abandon) the Subject Line." *Albright*, ECF No. 20-1 at 2.

The POTB's failure to operate trains on the segment since 2007, together with its statement to the STB of its intent to "fully abandon" the segment for rail service, would have been sufficient to terminate the easements limited to railroad purposes by abandonment under Oregon law because no other use of the segment would have remained. In Oregon, "[a] party claiming abandonment [of an easement] must show in addition to non-use 'either [a] verbal expression of an intent to abandon or conduct inconsistent with an intention to make further use.'" *Conner*, 920 P.2d at 174. Here, the POTB has not used the relevant railroad purposes easements for years, and expressed its intent to abandon rail service in the STB Notice. *Id.*; *see also Caquelin*, 2020 WL 2781657, at *9 (applying Iowa law, and holding that "[t]he railroad filed an application to abandon, indicating an affirmative intent to abandon"). Thus, the court finds that the plaintiffs have presented sufficient evidence of an expression of an intent to abandon the rail line prior to the issuance of the NITU and that issuance of the NITU interfered with the POTB's intent to abandon the rail line. The government has not identified "any evidence at all affirmatively indicating that the railroad would have delayed abandonment . . . had there been no NITU to interfere with the grant of authority of abandonment" that would otherwise have taken effect. *Caquelin*, 2020 WL 2781657, at *9. Thus, plaintiffs have established a taking as of the issuance of the NITU.

In view of the foregoing, it is irrelevant that inconsistent use is not grounds for termination of an easement in Oregon. Here, the evidence established that POTB had

ceased to operate the line in 2007 and after consideration had decided to finally terminate

operations and to fully abandon railroad use on the relevant segment. The government

has not presented any evidence that the POTB would not have abandoned rail service

over the segment.  Rather, all evidence supports that the POTB would have abandoned

rail use over the segment and that any railroad purpose easements would have reverted

back to the plaintiffs that granted them, but for the issuance of the NITU.  The

government's motion for partial summary judgment regarding the measure of just

compensation therefore is denied. Just compensation must be measured assuming the

subject property was not encumbered by a railroad easement.

### B.   Properties Where There Is an Intervening Road Between the Plaintiffs' Property and the Railroad Right of Way

The court now turns to the plaintiffs that own properties where there is an

intervening road, street, or other boundary between the plaintiffs' property and the

railroad right of way. As discussed below, the court finds that, under Oregon law, these

plaintiffs own only to the centerline of the intervening road, street, or other boundary and

have not established a property interest in the railroad right of way to pursue a takings

claim.

### 1.   Undisputed Facts

The *Loveridge* plaintiffs' motion for summary judgment claims that they own the

underlying fee to the centerline of the right of way for the below-listed properties.

*Loveridge* Pls.' Supp. Summ. J. Mot. and Mem. On Adj. Issues ("*Loveridge* Pls.' Adj.

Mot.) (ECF No. 102). Plaintiffs support their claims with undisputed evidence of the

conveyance deeds granted by prior landowners to the Railroad for the right of way between 1900 and 1910, as well as later documentation regarding the creation of a public road, street or other pathway adjacent to the Railroad's right of way in the form of resolutions providing notice to the public about the County's plan to construct the road and recommendations that a road be established with damages paid to the abutting landowner. Plaintiffs contend that under Oregon law even if their property is bounded by a road and not the railroad right of way, so long as a prior landowner granted an easement to the railroad and owned the property at the time the public road was created, the plaintiffs can claim ownership across the intervening road up to the railroad right of way.

The government argues in its cross motion that plaintiffs whose property boundary is a road, street, or other pathway and not the railroad right of way cannot prove a taking based on deeds that show their predecessor deeded property to the Railroad and for the road or street. Def.'s Opp. & Cross Mot. for Part. Summ. J. on Adjacency Issues ("*Loveridge* Def.'s Adj. Mot.") (ECF No. 107). The government argues that under Oregon law current landowners who own property bounded by a road, street, or pathway own only to the centerline of the road or street and cannot claim any ownership of the railroad right of way.

The following chart summarizes the undisputed evidence:

| Claimant and Claim No. | Conveyance Deed and Date to the RR | Intervening Road and Documentation | Property Description in Modern Deed or Plat Describing Property Boundary |
|---|---|---|---|
| Bay Air LLC Claim No. 47.D | Whitney Co. 7/84 (5.29.1907) | Idaville Rd.<br><br>Journal J/Page | "along the Northerly Right of Way boundary of the County Road to Idaville . . ." |

| | | 250 (10.12.1920) | |
|---|---|---|---|
| Stephen C. and Genene A. Grimes Claim No. 77 | Hammond Lumber 23/308 (3.11.1910) | Foss Rd.<br><br>Road Survey-Book B/Pg. 194 (4.8.1908)<br><br>Road Book 3/Pg. 250 (11.4.1908) | The deed describes the property as "Parcel 2, Partition Plat 1992-22, Tillamook County, Oregon." Plat 1992-22 describes the boundary as follows: "Commencing at a point which is . . . on the north right-of-way line of Foss-Batterson County Road; thence along said North right-of-way line ………." |
| Terry and Michelle Hart Claim No. 78 | Hammond Lumber 23/308 (3.11.1910) | Foss Rd.<br><br>Road Survey-Book B/Pg. 194 (4.8.1908)<br><br>Road Book 3/Pg. 250 (11.4.1908) | "on the North right-of-way line of Foss-Batterson County Road, . . . thence along said North Right-of Way line…….." |
| Joseph Cadwell Claim No. 130 | Prescriptive Easement (no source deed identified) & Chance 5/449 (fee) | Highway 101<br><br>Road Resolution 388 (12.1.1926) | "to the North right-of-way line of Highway 101, thence Northwesterly along the North right-of-way line of Highway 101………." |
| Keith Chartier Claim No. 134 | Hammond Lumber 23/308 (3.11.1910)<br><br>Kunz 13/15 | Foss Rd. (constructed in 1920)<br><br>Road Survey-Book B/Pg. 194 (4.8.1908)<br><br>Road Book 3/Pg. 250 (11.4.1908) | "true point of beginning of this parcel . . . being on the Northerly right-of-way line of the County Road, . . . along the North right-of-way line of the County Road………" |
| Deborah Nitzche Claim No. 170 | Hammond Lumber 23/308 (3.11.1910) | Foss Rd. Road Survey-Book B/Pg. 194 (4.8.1908)<br><br>Road Book 3/Pg. 250 (11.4.1908) | "lying North of the Northerly right of way of Foss-Batterson County Road[.]" |
| Lawrence Wood Claim No. 201 | Hammond Lumber 23/308 (3.11.1910) | Foss Rd. Road Survey-Book B/Pg. 194 (4.8.1908)<br><br>Road Book 3/Pg. 250 (11.4.1908) | The deed describes the property as "Parcel 1, Partition Plat 1992-022 in Tillamook, County, Oregon………" Plat 1992-022 describes the property boundary as "[c]ommencing at a point |

14

| | | | |
|---|---|---|---|
| | | | which is . . . . . . .on the north right-of-way line of Foss-Batterson County Road; thence along said North right-of-way line. . . . . . ." |
| David P. Reber, Claim No. 204.B | Whitney Co. 7/84 (5.29.1907) | Idaville Rd.<br><br>Journal J/Page 250 (10.12.1920) | "Beginning at ¾ inch iron pipe in the apparent centerline of County Road, . . . thence continuing along the apparent centerline of said road……." |
| Birthe Schweter Claim No. 205 | Byrom 5/310 | Highway 101 (E. Garibaldi Dr.)<br><br>Road Resolution 175, parcel 2 NARA map 23, parcel 31 | "Beginning at a point . . . on the Northerly line of the Coast Highway." |
| Lori J. & Richard K. Ruffo Trust Claim No. 103.A | Beals 18/41 | N. Miller Street<br><br>Plat | The deed describes the property as "Lot 1 and the North 5 feet of Lot 2, Block 49, BEALS' ADDITION TO LAKE LYTLE." The plat for Beals' Addition shows a street (Davis Avenue) as the border for parcel 103.A. |
| Carol Woodbridge Claim No. 202 | Beals 18/41 | N. Miller Street<br><br>Plat | The deed describes the property as "Lot 5, Block 49, BEALS' ADDITION TO LAKE LYTLE[.]" The plat for Beals' Addition shows a street (Davis Avenue) as the border for parcel 202. |
| Florian Davis Claim No. 210 | J.F. Carstens 72/530 | Banks-Veronia State Trail<br><br>J.F. Carstens 72/530[4] | "to the Northeasterly right-of-way line of [Burlington Northern] Railroad" |

*Loveridge* Pls.' Adj. Mot. at 2, 4-5 and *Loveridge* Def.'s Adj. Mot. at 2-3.

---

[4] The Carstens deed granted a right of way to the Railroad and a second right of way which became the Banks-Veronia State Trail in 1974. *See Loveridge* Pls.' Adj. Mot. at 10.

The disputed issues of fact include whether the property interest conveyed to create the intervening road or street was a fee interest or easement. The plaintiffs claim that they have provided sufficient evidence to presume that an easement was conveyed for the establishment of a public road or street under Oregon law. *Loveridge* Pls.' Adj. Mot. at 6 (citing *Lankin v. Terwilliger*, 29 P. 268 (Or. 1892)). The government disputes whether the evidence relied upon by plaintiffs indicates that conveyance for the intervening road was an easement. *Loveridge* Def.'s Adj. Mot. at 7. As discussed below, the court need not address this dispute and assumes without holding that the conveyances for these roads or streets was an easement.

### 2.    Relevant Federal and Oregon Law

"To demonstrate a cognizable property interest in a Trails Act case, a plaintiff must establish ownership in land adjacent to the railroad line described in the NITU and that ownership in that land can be traced to the railroad company's acquisition." *Anderson v. United States*, 147 Fed. Cl. 661, 671 (2020) (citing *Brooks v. United States*, 138 Fed. Cl. 371, 377 (2018)). The above-noted plaintiffs can show that a prior owner of their land granted a deed to the Railroad for a right of way. However, the deed from the plaintiffs' predecessor to the plaintiffs identifies a road, street or other pathway as the boundary of their property.

Under Oregon law, statutory and common law presumptions apply regarding the ownership of property underlying a road or street adjacent to a property. Oregon law's centerline presumption provides that the adjacent landowners on either side of the road each own the underlying fee to the centerline of the road. *See* Or. Rev. Stat. § 93.310(4)

16

("When a road or stream of water not navigable is the boundary, the rights of the grantor to the middle of the road, or the thread of the stream, are included in the conveyance, except where the road or bed of the stream is held under another title.").

The centerline presumption in Oregon statutory law is consistent with Oregon common law. *See Howe v. Greenleaf*, 320 P3d 641, 646 (Or. Ct. App. 2014) (recognizing that the statute is a codification of common law). As relevant here, the presumption applies where a road is dedicated through the property of a single owner by creating distinct parcels: "The creation of any dedicated road through the property of a single owner has the practical effect of creating distinct parcels, although in common ownership, on both sides of the dedicated road." *Id.* at 648. In this situation, the conveyance of one of the distinct parcels includes only to the the centerline of the road. *Id.* at 648; *see also Coussens v. Stevens*, 113 P.3d 952, 959-60 (Or. Ct. App. 2005) (citing cases).

Oregon law recognizes an exception to the centerline presumption "where the dedicated road runs between two tracts of land *under different ownership* and the road was wholly dedicated from only one of the owners' tracts." *Howe*, 320 P.3d at 647 (emphasis added). In that case, "the *entire* width of the road transfers with the abutting property from which it was wholly dedicated." *Id.* (emphasis added); *see id.* at 648 (declining to apply this exception because "[a]t the time that Skyland Drive was dedicated, the Smiths owned all of the property on *both* sides of the road and owned the entire fee underlying the road" (emphasis added)).

### 3.    Analysis

17

Here, the plaintiffs argue that so long as they can establish that the prior landowner conveyed the entire interest necessary for the road placed between their property and the railroad right of way, the court should presume that the current owner owns the land under the entire road – not just to the centerline. Therefore, plaintiffs argue, they can establish that they own the property adjacent to the railroad right of way, a necessary condition for just compensation. *Loveridge* Pls.' Adj. Mot. at 3; *Loveridge* Pls.' Adj. Reply at 3-5 (ECF No. 108). The plaintiffs contend that the presumption in Oregon law that two parcels are created—one on either side of the roadway when the road was created—should not bar their claim if their predecessor owned the entire tract at the time the road was established. In support of their position, the plaintiffs cite cases in this court applying the law of other states that also involved intervening roadways. *Id.* at 5 (citing *Haggart v. United States*, 108 Fed. Cl. 70 (2012) (applying Washington law) and *Hardy v. United States*, 127 Fed. Cl. 1 (2016) (applying Georgia law)). In both of those cases, this court held that where an intervening road was granted by the plaintiffs' predecessors as an easement, the plaintiffs, although not directly adjacent to the railroad right of way, were presumed to own the railroad right of way to the centerline. *Haggart*, 108 Fed. Cl. at 85; *Hardy*, 127 Fed. Cl. at 15-16.

The government responds that the plaintiffs' reading of Oregon law is unsupported. *Loveridge* Def.'s Adj. Mot. at 7. The government argues that for 11 of the parcels with an intervening boundary[5] the plaintiffs have established only a presumption

---

[5] Bay Air LLC (47.D), Stephen C. and Genene A. Grimes (77), Terry and Michelle Hart (78), Joseph Cadwell (130), Keith Chartier (134), Deborah Nitzche (170), Lawrence Wood (201),

that they own to the centerline of the road.[6] The government argues that these plaintiffs have not established that they own the entire roadway and thus have failed to show that their properties are adjacent to the railroad right of way.

According to the government, under Oregon law, if property is acquired for a road then two distinct parcels are created, with one parcel on each side of the road owning up to road's centerline. Def.'s Adj. Mot. at 4. The government further contends that, under Oregon law, the conveyance of one parcel does not include the conveyance of the other unless expressly stated. *Id.* This view is consistent, the government argues, with the plaintiffs' ownership deeds which "explicitly use the intervening roads as boundaries or convey only to the centerline of the intervening roads." *Id.* at 4-5.

The government argues that the pending case is similar to *BHL Properties LLC v. United States*, 135 Fed. Cl. 222 (2017), which involved Wisconsin law. In *BHL Properties*, the plaintiff sought to show that he owned the entirety of the property underlying an intervening road by relying, in part, on the deed of a prior landowner conveying the easement for the entire road. *Id.* at 229. The court found that the prior deed

---

David P. Reber (204.B), Birthe Schweter (205), Lori J. & Richard K. Ruffo Trust (103.A), and Carol Woodbridge (202).

[6] The government contends that the tax documents provided regarding the Florian Davis (210) parcel and the intervening state trail indicate that the landowner does not own fee title of land underlying the state trail easement and thus cannot establish a taking claim.  Def.'s Adj. Mot. at 8. The plaintiffs respond that whether the easement is under a separate tax parcel is "non-responsive and irrelevant" under their application of the centerline presumption to their predecessor's land. *See Loveridge* Pls' Adj. Reply at 3 n.9. The court agrees with the government that the tax documents are relevant in determining the bounds of plaintiffs' current property and prove that plaintiffs have not established ownership of any land directly adjacent to the railway for this parcel.

was "sufficient to establish that [the prior owner] once owned the land under [the road] in fee simple" but that "nothing in the record show[ed] that [the current plaintiff] is in the chain of title as successor-in-interest to [the prior landowner] with respect to the land underlying [the road.]" *Id.* Even if the centerline presumption was applied, the court concluded that the plaintiff could claim ownership to the center of the intervening road only. *Id.* The court concluded that it did not matter that a prior individual owned the entire parcel under the road adjacent to the railroad right of way without chain of title linking the plaintiff to that predecessor. *Id.* The court explained that without "evidence of conveyances that link [the prior owner's] retained interest" in the land underlying the road to the plaintiff, "it is thus entirely possible that someone other than [the plaintiff] (such as, for example, a neighbor whose land also abuts [the road] either to the north or the south) is the successor-in-interest . . . as to the land [the plaintiff] claims he owns." *Id.* Here, as well, the government argues, it is entirely possible that a neighbor whose land also abuts the intervening road owns the land at issue or that ownership was reserved by a prior landowner.

After considering the applicable Oregon law, the court finds that the above-identified plaintiffs have established only that they own to the centerline of the road, street or pathway on the boundary of their property and not to the railroad right of way. To begin, the court rejects the plaintiffs' contention that the centerline presumption should be applied "at the time the railroad's right-of-way was constructed," regardless of the establishment of the intervening roadway. *Loveridge* Pls.' Adj. Reply at 4. A Trails Act taking occurs "when a railroad right-of-way is converted to interim trail use" and

state law reversionary property interests "that would otherwise vest in the adjacent landowners are blocked from so vesting." *Caldwell*, 391 F.3d at 1233. Therefore, only the ownership interests of the plaintiffs at the time the NITU was issued is relevant to deciding liability.

In considering the ownership interests of the plaintiffs at the time the NITU was issued, and assuming but not deciding that the intervening roads, streets, or other pathways granted by the prior landowners are easements, the court finds that plaintiffs have failed to show that they own more than to the centerline of the intervening road, street or pathway identified as a boundary in their deeds. As discussed above, Oregon law presumes that where a road is built on a single grantor's land, two parcels are created with one parcel on each side of the road's centerline. *See Howe*, 320 P.3d at 648. Only where there are two owners, where each owns a parcel on either side of the road and where only one provides the land for the road, does Oregon law presume that the party that provided the land for the entire road owns all of the property underlying the road. *Id.* at 647. Here, plaintiffs presented no evidence of two owners at the time the roads were created. Without this evidence, it must be presumed that the parcel closest to the railroad right of way is now owned by someone other than the plaintiffs.  *Id.* ("[T]itle to half the road continues to presume to pass with the conveyance of an abutting property whether the conveyance is made while the road is in existence or after the abutting road is vacated."); *Coussens*, 113 P.3d at 959-60 (concluding that where the plat shows a road as a western boundary, the grantor reserved for himself the land underlying the western half of the road and land west of the road).

To defeat to the government's motion for summary judgment, these plaintiffs needed to do more than produce documents regarding the creation of a public road on a prior landowner's property. Contrary to plaintiffs' contentions, the court cannot presume that the property underlying the entire road belongs to them because it once belonged to a prior landowner where the modern deeds show that the property conveyed to the plaintiffs is bounded by the intervening road. Plaintiffs had to produce evidence to show that the land on the other side of the centerline of the road and directly adjacent to the railroad right of way was also conveyed to them. *See BHL Props.*, 135 Fed. Cl. at 229. Plaintiffs have failed to do so for any of the subject deeds, which show only that their property is bounded by a road and do not expressly state that the land underlying the road was conveyed to them. For this reason, the court cannot find that the plaintiffs' own property adjacent to the railroad right of way or to the centerline of the railroad right of way.  Plaintiffs' motion for partial summary judgment on this issue is denied and the government's motion for partial summary judgment is granted.

### C.    Properties Where a Source Deed for the Railroad's Right of Way Is Not Before the Court

The court now turns to the five *Albright* parcels and ten *Loveridge* parcels where the parties have not identified an instrument of conveyance of a right of way to the Railroad. As discussed below, the court finds that under Oregon law, where the only available evidence indicates that the property was acquired by condemnation, adverse possession, franchise, or vacation, the Railroad is presumed to only have acquired an easement for Railroad purposes, but where the only available evidence indicates that the

22

Railroad possessed its right of way in fee, the Railroad is presumed to have acquired its interest in fee.

## 1. Undisputed Facts

At issue in *Albright* are five parcels belonging to James A. Smejkal, Bel Cochran, LLC, Cochran 2 LLC, Three Bridges, LLC, and Oregon Coast Hospitality Investments, LLC, for which the parties have not identified an instrument of conveyance of a right of way to the Railroad.[7] *Albright* Mot. for Partial Summ. J. (ECF No. 118) ("*Albright* Pls.' Mot."). These plaintiffs have instead provided the court with (a) the bounds of the plaintiffs' modern deeds, (b) tax records showing that the plaintiff owned the land on July 26, 2016 (the date the NITU was issued), and (c) a copy of any maps kept by the National Archives and Records Administration prepared by the Interstate Commerce Commission ("ICC"), referred to as "Val Maps," noting the basis for the Railroad's property interest. The Val Maps state "Registrar of Title" in connection to the James A. Smejkal, Bel Cochran LLC, and Cochran 2 LLC parcels and "No Record" in connection to the Three Bridges, LLC and Oregon Coast Hospitality Investments LLC parcel.

In addition, before the court is the Washington County Department of Assessment and Taxation Certificate of Withdrawal dated June 28, 1972, which describes the Railroad as the owner "in fee simple" of portions of its corridor adjacent to the James A. Smejkal, Bel Cochran, LLC, and Cochran 2 LLC parcels. *See Albright* Def.'s Resp. in

---

[7] The government now concedes that the Howell Tree Farm's Parcel 3N400C005700 was acquired through a condemnation proceeding which conveyed an easement limited in scope to railroad purposes. *See Albright* J. Stipulation Regarding Title Matter (Dec. 10, 2019) (ECF No. 134).

Opp. to Pls.' Mot. ("*Albright* Def.'s Resp.) at 3 (ECF No. 126). The Certificate of

Withdrawal states "[a]s the owner in fee simple of the . . . real property [described in the

certificate] . . . The Pacific Railway and Navigation Company . . . has filed application

for the withdrawal of title to said real property from the registry system, and for restoring

or changing the same back to the recording system." *Id*. at 3 (citing ECF No. 24-11).

Ten parcels are at issue in *Loveridge*. *Loveridge* Mot. for Partial Summ. J. (ECF

No. 91) ("*Loveridge* Pls.' Mot."). These parcels belong to Daniel Yeoman (39.A-C), Old

Mill Investment LLC (43.D), Carol H. Trustee (59.A), Leonard C. & Kathleen A. Parker

(101), Harvey Strong (112.B), John & Margie Anderson Living Trust (121), Douglas F.

Brown (126), and Joseph Cadwell (130). The plaintiffs have prepared a map for each

parcel from an overlay of the applicable Val Map with the county's parcel report. *Id.* at 2.

The Val Maps state "No Record at Hand" for the Old Mill Investment LLC (43.D),

Harvey Strong (112.B), Douglas F. Brown (126), and Joseph Cadwell (130) parcels. *Id.*

at 3-4. The Val Maps reference a "Condemnation" proceeding in connection to the Daniel

Yeoman (39.A-C), Leonard C. & Kathleen A. Parker (101), and John & Margie

Anderson Living Trust (121) parcels. *Id.* at 7. The Val Map also states "Vacation" for a

portion of the Leonard C. & Kathleen A. Parker (101) parcel. *Id.* at 9. Finally, the Val

Map states "Franchise" for portions of the Carol H. Trustee (59.A) parcel. *Id.* The

plaintiffs subpoenaed the POTB to request all service conveyance instruments listed on

the Val Maps, and the POTB provided a list of all the conveyance instruments it had

related to the railroad line. *Loveridge* Pls.' Mot. at 6. POTB's list did not include any

conveyance instruments for the parcels at issue. *Id.* In addition, the plaintiffs provide a

letter from the Fidelity National Title Insurance Company indicating that a search was

conducted regarding the three *Loveridge* condemnation claims, and no documents could

be provided after a "reasonably diligent search of available records." *Id.* at Ex. I (ECF

No. 91-9).

### 2.     Relevant Federal and Oregon Law

One of the "determinative issues for takings liability" is "who owns the strip of land

involved, specifically, whether the railroad acquired only an easement or obtained a fee

simple estate." *Ellamae Phillips Co. v. United States*, 564 F.3d 1367, 1373 (Fed. Cir.

2009). The court has already determined in these cases whether the Railroad acquired an

easement or fee for properties where there is a source deed conveying the right of way to

the Railroad. *See Loveridge*, 139 Fed. Cl. at 127. The liability issue for the properties

described in this section of this opinion is whether the Railroad is presumed to have

acquired no more than an easement under Oregon law where there is no source deed and

the Val Maps for the parcels at issue reference condemnations, no record, franchise,

vacation, or a registrar of title.

Oregon courts have recognized that the "general rule regarding the interest taken

in a right-of-way condemnation proceeding by a railroad is that, unless otherwise

expressly provided by statute or in the instrument of taking, only an easement is

acquired." *Egaas v. Columbia Cty.*, 673 P.2d 1372, 1375 (Or. Ct. App. 1983) (citing

*Cappelli v. Justice*, 496 P.2d 209 (Or. 1976) and 3 Nichols, Law of Eminent Domain 9-6

to 9-10, § 9.2 (3d ed rev. 1975)). In addition, where Oregon statutes governing railroad

right of way condemnations allowed railroad companies to take "whatever estate was

*necessary* to accomplish the railroad's purpose," the Oregon (and other) courts have determined what the railroad acquired at a condemnation proceeding in light of what was necessary for the railroad's purpose, based on the language of the condemnation judgment. *Egaas*, 673 P.2d at 1375.

When a railroad acquires a right of way through a franchise agreement or the vacation of a public road, the railroad appropriates its property interest from a public road. This arises from the local government's power to grant "exclusive privileges or franchises" over public rights of way. *Parkhurst v. City of Salem*, 32 P. 304, 304-05 (Or. 1893); *see also McQuaid v. Portland & V. Ry. Co.*, 22 P. 899, 902 (Or. 1889) (explaining that a governmental body is the owner of the "franchise" in a public right of way).[8] In addition, when the local government acquires property for a public road, Oregon courts presume that the government acquired only an easement. *Lankin v. Terwilliger*, 29 P. 268, 269 (Or. 1892) ("By the location of [a] county road over the lands of [private property owners], the public [acquires] no more than a right of way as an easement or servitude, with the powers and privileges incident thereto.").

### 3.    Analysis

---

[8] The authority of a railroad to appropriate public roads is set forth by Or. Rev. Stat. § 772.105(1):

> When it is necessary or convenient in the location of any railway to appropriate any part of any public road, street, alley or public grounds not within the corporate limits of a municipal corporation, the county court of the county wherein such road, street, alley or public grounds is located, may agree with the corporation constructing the road, upon the extent, terms and conditions upon which the same may be appropriated or used, and occupied by such corporation. If the parties are unable to agree, the corporation may appropriate so much thereof as is necessary and convenient in the location and construction of the road.

The plaintiffs in *Albright* and *Loveridge* have moved for partial summary judgment regarding the fifteen parcels for which no instrument of transfer from the landowner to the Railroad has been located. Instead, the plaintiffs rely on secondary evidence in the form of Val Maps prepared by the ICC. The plaintiffs argue that pursuant to these Val Maps, where (1) the Railroad acquired its property through "condemnation," (2) where there is "no record" of an instrument of transfer, (3) where the Railroad acquired its property through "vacation" or "franchise", and (4) where the Railroad's conveyance is held in the "Registrar of Title," Oregon law presumes that the Railroad acquired at most an easement. *Albright* Pls.' Mot. at 4-5; *Loveridge* Pls.' Mot. at 4, 7, 9.

The government has moved for partial summary judgment for all of these parcels claiming that the Val Maps are insufficient to establish the Railroad's interest in its right of way, and that plaintiffs have misconstrued the presumptions applicable under Oregon law. *Albright* Def.'s Resp. at 6-7, *Loveridge* Def.'s Resp. at 2-3. In addition, for the three parcels in *Albright* where the government has found the Railroad's 1972 Certificate of Withdrawal, the government argues the evidence establishes that the Railroad obtained a fee interest and thus plaintiffs cannot establish liability. *Albright* Def.'s Resp. at 2-4.

Before turning to the plaintiffs' arguments, the court must address the government's threshold contention that Val Maps are not by themselves sufficient to establish the scope of the Railroad's interest and thus government liability. *See Albright* Def.'s Resp. at 7 (citing *Amaliksen v. United States*, 55 Fed. Cl. 167, 175 (2003)). While the court agrees that it may be inappropriate to rely on Val Maps to determine ownership where the language in an available source deed is clear, *Amaliksen*, 55 Fed. Cl. at 172,

this court has relied on Val Maps to determine takings liability where "neither party has provided any evidence of a deed." *See, e.g.*, *Mills v. United States*, 147 Fed. Cl. 339, 348 (2020). In addition, the plaintiffs have sought additional documentary evidence by issuing a subpoena to the POTB and having the Fidelity National Title Insurance Company conduct a search regarding the condemnation claims. The "[p]laintiffs have done what they can, and it is thus inappropriate to speculate, as defendant does, that the railroads *might* have obtained their interest by fee." *Id*. As such, the court may rely on Val Maps as the only available evidence of the Railroad's property interest and thus the government's potential liability.

Having agreed to accept the Val Maps as evidence of the Railroad's property interest, the court turns first to the Daniel Yeoman (39.A-C), Leonard C. & Kathleen A. Parker (101), and John & Margie Anderson Living Trust (121) parcels for which the Val Maps reference condemnation. Relying on *Egaas*, 673 P.3d at 1374, the plaintiffs argue that the Railroad is presumed to have obtained only an easement in condemnation proceeding where there is "no evidence to suggest the railroad" acquired or needed more than an easement. *Loveridge* Pls.' Mot. at 7. The government argues that the plaintiffs' reliance on *Egaas* is misplaced because that case involved the interpretation of an actual condemnation judgment and thus the holding does not apply to the current case. *See Loveridge* Def.'s Resp. at 4-5. The government contends that where there is no condemnation judgment in evidence, there are no applicable presumptions regarding the Railroad's ownership interest and the plaintiffs have failed to meet their burden of proof. *Id.*

The court agrees with the plaintiffs that *Egaas* articulates the "general rule" in Oregon that a railroad acquires only an easement in a condemnation proceeding "unless otherwise expressly provided by statute or in the instrument of taking." 673 P.2d at 1375. The *Egaas* court recognized that this general rule is consistent with Oregon statutes which "authorized a railroad to take whatever interest, fee or easement, in the appropriated land that was *necessary* to accomplish its purposes." *Id.* (emphasis added).[9] The *Egaas* court then applied this presumption to interpret ambiguous language in a condemnation judgment. *Id.*  Eventually, the Oregon court concluded that an easement was acquired because "[a]n easement was all that was necessary for railroad purposes in this instance." *Id.*

The court finds that the reasoning in *Egaas* is applicable to this case. Although there is no record of the condemnation judgment before the court for the properties identified as having been "condemned" on the Val Map, the court can presume absent any evidence to the contrary that the Railroad acquired only that which was necessary for its railroad purpose, namely an easement. *See id.* ("[T]he condemnation statutes limit the nature of the estate taken to that necessary to accomplish railroad purposes."). The court thus holds that the Railroad is presumed to have acquired at most an easement through condemnation in connection to the Daniel Yeoman (39.A-C), Leonard C. & Kathleen A. Parker (101), and John & Margie Anderson Living Trust (121) parcels. The plaintiffs'

---

[9] The court in *Egaas* explained that this limitation on a railroad company did not necessarily apply in cases of a voluntary conveyance. 673 P.2d at 1375. Where there is a voluntary conveyance, the extent of the property interest is based on the intent of the parties. *Id.*

motion for partial summary judgment regarding these parcels is granted and the government's motion is denied.

The court next turns to the Three Bridges, LLC, Oregon Coast Hospitality LLC, Old Mill Investment LLC (43.D), Strong Harvey (112.B), Douglas F. Brown (126), and Joseph Cadwell (130) parcels where the Val Map indicates that "no record" is available regarding a conveyance to the Railroad. Here, the plaintiffs argue if no evidence of a conveyance instrument exists, the court should presume that the Railroad obtained a prescriptive easement over the right of way. Plaintiffs argue that this result is consistent with the presumption applied in other states,[10] and is a proper extension of the presumptions applied by Oregon courts regarding other rights of way.[11] *See Loveridge* Pls.' Mot. at 4; *Albright* Pls.' Mot. at 10-11. The government responds that because no Oregon case has addressed the rights of a railroad where there is no source deed, the court cannot presume the Railroad obtained at most an easement. *See Loveridge* Def.'s Resp. at 3. As such, the government argues that even if there is no deed, plaintiffs have failed to identify sufficient evidence to meet their burden of proof. *Id.*

---

[10] In other jurisdictions, a right of way obtained by prescriptive use of land for railroad purposes has been held to provide only an easement. *See Schulenberg v. United States,* 137 Fed. Cl. 79, 98 (2018) (railroad obtained prescriptive easement where parties could not locate any original source deed under Indiana law); *Dana R. Hodges Trust v. United States*, 101 Fed. Cl. 549, 560 (2011) (finding that where no documents existed, the railroad could not obtain any interest greater than a prescriptive easement under Michigan law); *Ybanez v. United States*, 98 Fed. Cl. 659, 666 (2011) (applying Texas law to conclude that "[a] railroad that uses a strip of land for railroad operations only, as if it had condemned the land for railway use, cannot acquire more than an easement for railroad purposes").

[11] As discussed above, where the public acquires a right of way for a road, it is presumed that only an easement was acquired. S*ee Lankin*, 29 P. at 269.

Having carefully considered the parties' arguments, the court concludes that the Railroad is presumed to have only acquired an easement where the Railroad acquired its right of way through prescription. The court finds it appropriate to extend the statutory limitations relied on in *Egaas*, regarding the condemnation of railroad right of ways, to circumstances where a railroad acquires its right of way through prescription. *See* 673 P.2d at 1375. To hold otherwise would mean that a railroad company could acquire title through prescription where it could not through a condemnation proceeding. Moreover, as the plaintiffs argue, limiting the interest conveyed to an easement is consistent with Oregon law applicable to other right of ways. *See Lankin*, 29 P. at 269. Here, where the available evidence in the form of Val Maps indicates that there was no record of a conveyance to the Railroad, the plaintiffs have presented sufficient evidence through the Val Map to rely on the *Egaas* presumption in connection the Three Bridges, LLC, Oregon Coast Hospitality LLC, Old Mill Investment LLC (43.D), Strong Harvey (112.B), Douglas F. Brown (126), and Joseph Cadwell (130) parcels. The plaintiffs' motion for partial summary judgment for these parcels is granted, and the government's motion is denied.

The court now considers the Kathleen A. Parker (101) and Carol H. Trustee (59.A) parcels, where the Val Maps state that the Railroad acquired its property rights by "Franchise" or "Vacation." The plaintiffs argue that "the purpose of a franchise agreement or vacation was to allow the railroad to construct its line over what were then public streets or county roads." *Loveridge* Pls.' Mot. at 9. These streets and roads, the plaintiffs argue, were held as easements and thus the property acquired through the

vacation of a public street or road is also only an easement. *Id.* The government argues that while the Val Maps indicate that the Railroad acquired its rights by vacation or franchise agreement, the plaintiffs have not met their burden because they have not provided copies of the applicable conveyance documents for those segments. *Loveridge* Def.'s Resp. at 6.

As discussed above, the Val Maps constitute the available evidence and the plaintiffs are entitled to rely on them to demonstrate what property interest the Railroad acquired. In Oregon, where a railroad acquires its right of way through franchise or vacation, the railroad is given a right of way over a public road. *See Parkhurst*, 32 P. at 304-05; *McQuaid*, 22 P. at 902. Because the road holds only an easement under Oregon law, *see Lankin*, 29 P. at 269, it is logical to presume that the Railroad acquired at most an easement to operate over the road. As such, the *Loveridge* plaintiffs' motion for partial summary judgment in connection to the parcels for Kathleen A. Parker (101) and Carol H. Trustee (59.A) is granted, and the government's motion is denied.

Finally, the court turns to the motions regarding the James A. Smejkal, Bel Cochran LLC, and Cochran 2 LLC parcels for which the Val Maps state that the Railroad obtained its right of way through a "Registrar of Title" and for which the government has provided a Certificate of Withdrawal from June 28, 1972.

The government argues that the Val Maps reference to "Registrar of Titles" means a "certificate showing title to the land was registered with the County's Registrar of

Deeds through the Torrens system." *Albright* Def.'s Resp. at 2.[12] In addition, the government references the Certificate of Withdrawal from June 28, 1972, which states "[a]s the owner in fee simple of the . . . real property [described in the certificate] . . . The Pacific Railway and Navigation Company . . . has filed application for the withdrawal of title to said real property from the registry system, and for restoring or changing the same back to the recording system." *Id.* at 3 (citing ECF No. 24-11). Thus, the government argues that there is evidence of a "recorded instrument that conclusively shows" that the Railroad owed the property in fee and plaintiffs claim to ownership of the underlying Railroad right of way fails as a matter of law. *Id.* at 3-4.

The plaintiffs concede the Railroad's Certificate of Withdrawal from the registry system indicates that the Railroad held "*some* interest in the land." *Albright* Pls.' Reply at 6 (ECF No. 128). Plaintiffs respond that the Certificate of Withdrawal is not "conclusive evidence" that the Railroad owned a fee estate interest and without such conclusive evidence it is presumed that the Railroad obtained an easement. *Id.* In addition, the plaintiffs argue that because their title company could not find a deed to the Railroad immediately preceding or following the Certificate of Withdrawal, further factual development is warranted. *Id.* at 6 n.1.

In a Trails Act case, "[t]o be entitled to compensation, a plaintiff must demonstrate that she or he is the owner of the burdened estate . . . ." *BHL Props.,* 135 Fed. Cl. at 228.

---

[12] In Oregon, the Torrens system, a system of land title registration, was established by statute and was in effect from 1901 until the early 1970s. *Albright* Def.'s Resp. at 2-3 (citing Or. Rev. Stat. §§ 94.0054-99.990, *repealed by* Or. Laws 1971, c. 478, § 1.).

Fact discovery in this case closed on August 7, 2017, and the evidence the government relies on was obtained prior to the close of discovery. The plaintiffs had an opportunity but have failed to produce any evidence to show that there is a disputed issue of material fact regarding the Railroad's fee ownership. The court therefore agrees with the government that the plaintiffs have failed to demonstrate ownership of the burdened land adjacent to the James A. Smejkal, Bel Cochran LLC, and Cochran 2 LLC parcels. While not conclusive, the Certificate of Withdrawal and the Val Maps are the only available evidence, and this evidence indicates that the Railroad owned the land in fee. No competing evidence has been presented to show plaintiffs' ownership in the underlying right of way. While plaintiffs suggest there could be more evidence, "mere allegations of a genuine issue of material fact without supporting evidence will not prevent entry of summary judgment." *Republic Sav. Bank, F.S.B. v. United States*, 584 F.3d 1369, 1374 (Fed. Cir. 2009); *see Schlumberger Tech. Corp. v. United States*, 845 F.3d 1158, 1166 (Fed. Cir. 2017) (holding that "speculation cannot prevent the entry of summary judgment"). The plaintiffs have failed to demonstrate ownership of the right of way in connection to the James A. Smejkal, Bel Cochran LLC, and Cochran 2 LLC parcels as a matter of law. As such, the government's motion for partial summary judgment regarding the James A. Smejkal, Bel Cochran LLC, and Cochran 2 LLC parcels is granted and the plaintiffs' motion for partial summary judgment is denied.

## CONCLUSION

For the reasons stated above, the plaintiffs' and the government's motions for partial summary judgment are **GRANTED-IN-PART** and **DENIED-IN-PART**.

Specifically, the government's motions for partial summary judgment regarding the appropriate measure of just compensation is **DENIED**. The plaintiffs' partial motion for summary judgment on applying the centerline presumption to the railway where there is an intervening road, street, or trail is **DENIED** and the government's cross motion that the plaintiffs are only presumed to own up to half of the intervening road, street, or trail is **GRANTED**. The plaintiffs' motions for partial summary judgment that the Railroad is presumed to have acquired no more than an easement in connection to the Three Bridges, LLC, Oregon Coast Hospitality LLC, Old Mill Investment LLC (43.D), Strong Harvey (112.B), Douglas F. Brown (126), Joseph Cadwell (130), Kathleen A. Parker (101), and Carold H. Trustee (59.A) parcels are **GRANTED**. Finally, the government's motion for partial summary judgment regarding the James A. Smejkal, Bel Cochran LLC, and Cochran 2 LLC parcels is **GRANTED** and the plaintiffs' motion for partial summary judgment is **DENIED**.

The plaintiffs filed additional motions for partial summary judgment on June 19, 2020. *Albright*, ECF No. 52, *Loveridge*, ECF No. 115, *Stimson Lumber*, ECF No. 33. The government will file its response briefs to these motions by **Monday, July 13, 2020**.

**IT IS SO ORDERED**.

s/Nancy B. Firestone
NANCY B. FIRESTONE
Senior Judge